UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 07-61025-Civ-ZLOCH/Snow

ANDREW I. GREENSPAN,

    Plaintiff,

vs.

Michael A. Astrue,
Commissioner of Social Security,

    Defendant.
_____/

### REPORT AND RECOMMENDATION

This cause is before the Court on the plaintiff's complaint seeking judicial review of a final decision of the Social Security Administration denying the plaintiff's application for disability insurance benefits. The complaint was filed pursuant to the Social Security Act, 42 U.S.C. § 401, et. seq., and was referred to United States Magistrate Judge Lurana S. Snow for report and recommendation.

### I. PROCEDURAL HISTORY

The plaintiff filed an application for disability benefits on November 14, 2001, alleging disability since July 1, 1995, as a result of his mental condition. The application was denied initially and upon reconsideration. The plaintiff then requested a hearing which was held before Administrative Law Judge Thurman Anderson on February 4, 2004. The Administrative Law Judge found that the plaintiff was not disabled within the meaning of the

Social Security Act.  The Appeals Council, after considering additional evidence, denied the plaintiff's request for review on June 22, 2007.  The plaintiff then filed this action seeking judicial review of the decision of the Commissioner.

## II. **FACTS**

On the date of the hearing, the plaintiff was 37 years old with a high school education and some college courses. (Administrative Record, hereinafter "R," at 245) His previous employment was as a security guard, cashier, busboy and dishwasher. (R: 245-246) He had worked as a security guard intermittently from 1986 to December 30, 1998. (R:59)

The record reveals that Robert Ginsburg, Ph.D., performed a psychological evaluation of the plaintiff on July 28, 1997, on referral from the Florida Division of Vocational Rehabilitation, which was developing a vocational plan for the plaintiff.  The plaintiff stated that he had worked as a security guard and at a golf course.  His last employment had been for three weeks eight months ago, as a construction laborer.  He had graduated from high school but had been a learning disabled program.  He also had taken several courses in accounting and business at Broward Community College ten years ago. He thought he had seen a psychiatrist when he was 13 years old, for hyperactivity. He denied drug use or alcohol abuse and said he was depressed owing to the death of a 82-year old friend of the family.  Dr. Ginsburg found that the

plaintiff had a full scale I.Q. score of 79, comprising a verbal scale of 89 and a performance scale of 71. He had a superior score in short term memory for digits, but difficulty in verbal abstract thinking. He had difficulty relating to his peers, and difficulty functioning under conditions of stress or anxiety. Dr. Ginsburg diagnosed a depressive disorder, a possible anxiety disorder and a learning disorder. He concluded that the plaintiff would be more suited to a solitary job where he could work with numbers, such as a stock clerk or inventory clerk. (R:167-169)

On January 26, 2001, Dr. Barry Kaplowitz performed a psychiatric evaluation of the plaintiff. The plaintiff stated that he had trouble sleeping, and occasionally was depressed and irritable. The plaintiff reported that he had used psychotropic drugs and alcohol for several months when he was 13 years old, but they sometimes made him paranoid. Dr. Kaplowitz prescribed Concerta and Risperdol. (R:84-85, repeated at R:162-163 and R:223-224)

When the plaintiff's mother made him leave their home, he voluntarily admitted himself to The Watershed treatment facility on May 3, 2001, for treatment of an opiate dependence (Ultram, Percocet, Lorcet and heroin), cannabis dependence mood disorder and schizoid affective disorder. He reported that he started using crack cocaine and marijuana when he was 18 years old, and continued

to use them regularly until the time he admitted himself to The Watershed. He also stated that he began using cocaine when he was 31 and heroin when he was 34. He was diagnosed as having major depression, and a treatment regimen was initiated. He was discharged on May 10, 2001, against medical advice, with recommendations to attend both group and individual therapy sessions. (R:87-105 and R:143-158)

Dr. Abraham Flemenbaum performed a psychiatric evaluation of the plaintiff on June 26, 2001. The plaintiff was seeking treatment for addictions. Dr. Flemenbaum prescribed Wellbutin and Desipramine, and suggested moving out of the area without disclosing his whereabouts and not frequenting the same places as his friends. The plaintiff next visited the office on August 7, 2001, after being arrested for soliciting to purchase cocaine. In addition to the medications, Dr. Flemenbaum suggested vocational rehabilitation as soon as possible. The plaintiff returned with his mother on August 21, 2001. His mother reported that the plaintiff had become abusive to her. (R:110-112) Subsequently, the plaintiff made an appointment for January 3, 2002, but then cancelled it. (R:231)

On January 24, 2002, an agency psychologist, Wendy Silver, Psy.D., completed a Psychiatric Review Technique form based on the plaintiff's medical records. The review contained no

4

findings, since insufficient evidence of treatment had been presented for the time period prior to June 1997. (R:113-126)

On February 1, 2002, the plaintiff was assessed at the Henderson Mental Health Center Crisis Center for substance induced paranoia. The plaintiff recounted that he had been sent to Florida State Hospital at age 13 because he refused to go to public school. The assessment ended with a referral to BARC and community counseling. (R:127-128)

On December 3, 2001, the plaintiff completed an agency disability report in which he stated that he lived with his mother, who paid his bills. He did not shop for food but ate by ordering food to be delivered or by going to restaurants. He did not attempt to do household chores since he had trouble finishing them. He could not hold a job because he could not deal with deadlines. (R:71-74) A reconsideration report dated February 28, 2002, includes the information that the plaintiff was involved in an automobile accident which hurt his neck, arms and back. He also reported that he slept a lot and did not arise until 6 p.m. (R: 75-78) The plaintiff's form requesting a hearing states that the automobile accident was on March 11, 2002. The plaintiff was hospitalized March 20-23, 2002, with seizures, which were treated medically. After his release from the hospital he received vocational rehabilitation for several months, but was unable to

find employment. The form also reports that Dr. Lawrence Silk treated the plaintiff monthly for high blood pressure, pain and anxiety during 2001 and 2002. (R:81-82)

The record includes medical reports from March 1, 2002, to July 12, 2002, for office visits and therapy sessions from Robert S. Schwartz, D.C., to treat back and shoulder pain from an automobile accident in April 2001 which was exacerbated by a second accident February 28, 2002. (R:170-222) On April 3, 2002, Dr. Schwartz referred the plaintiff to Alfred DeSimone, M.D., who recommended continuation of conservative treatment with Dr. Schwartz, MRI and CT imaging and second opinion consultation for long term therapy, such as surgical relocation and capsulorrhaphy at a university hospital. (R:206-208)

The plaintiff submitted to the Appeals Council Dr. Schwartz's final report of July 12, 2002. The report consisted of answers given by the plaintiff to a list of questions. The plaintiff said that he could no longer engage in strenuous physical activity that he had enjoyed prior to the automobile accident, and now slept a lot. He stated that he had to drop out of school after the accident because he could not study. He also reported that the only medication he was taking was Zynaflex. (R:232-233)

On April 10, 2002, an agency physician, Dr. Adelaida Arias, completed a Psychiatric Technique Review form. Although Dr.

Arias noted the plaintiff's problems with drug dependence, she reported that there was insufficient medical evidence presented to the agency to make any findings regarding the plaintiff's mental condition. (R:129-142)

On August 11, 2003, the plaintiff was examined by Trudy Block-Garfield, Ph.D., on referral from the Public Defender's Office, after the plaintiff was charged with violating a restraining order. The report stated that the plaintiff had no indications of psychosis but had poor insight and judgment. While the plaintiff understood the charges against him and the nature of judicial proceedings, Ms. Block-Garfield concluded that he would be unable to weigh any decisions regarding the case, or assist his attorney in any reasonable fashion. She concluded that the plaintiff was mentally ill, with a psychotic disorder which did not require hospitalization. (R:159-161)

On October 24, 2003, the plaintiff was examined by Arnold P. Carter, M.D., on referral from Mr. Joe Henry at Focus at High Pointe. Dr. Carter diagnosed schizophrenic disorder currently in a depressed state, an intermittent explosive disorder (also genetic in origin) and a multi substance dependence disorder. Dr. Carter

recommended a three-week sequential regimen of various medications.(R:234)[1]

On February 3, 2004, Dr. Arnold Carter prepared a Medical Assessment of Ability to Do Work-Related Activities. The report found that the plaintiff had a good ability to interact with a supervisor and maintain attention and concentration; he had a fair ability to follow work rules, relate to co-workers, deal with problems, use judgment and function independently, and a poor ability to deal with work stress, owing to his chronic [illegible] and mood disorder. His ability to make performance adjustments was fair or poor, but he recently began taking medication to stabilize his mental condition. He was rated fair to poor in making personal or social adjustments, owing to his chronic mental and emotional condition. (R:164-166, repeated at R:225-227)

The plaintiff provided an undated medication list which stated that since 2003 he had taken Effexor XR for depression and anxiety, Risperdal for schizophrenic disorder, Cogentin to offset his reaction to Risperdal, Trileptal for mood disorder and Vasofed and Hydrochlorezide to treat his high blood pressure. (R: 83)

The plaintiff testified at the hearing that he had worked as a security guard, cashier and busboy/dishwasher. He stated that

---

[1] This report was only made available to the Appeals Council. Counsel for the plaintiff was given an extension of time to obtain the document and make it available to the Administrative Law Judge after the hearing, but was unable to supply it within that time frame. (R:243-244)

he could not return to any of those jobs because his shoulders an foot were severly damaged. (R:245-246) The plaintiff stated that these injuries were the result of an automobile accident in 2001 and/or 2003. The ALJ noted that this would not establish an ongoing disability since 1997. (R:248-250)

With regard to his mental impairments, the plaintiff testified that he had gone to Henderson Clinic when he was 14, and had been a resident in South Florida State Hospital for four and a half months in late 1979 or early 1980. He was treated for his inability to behave or get along with others. (R:247-248) He saw Dr. Ginsberg in 1997, on referral from the State of Florida. (R:246-247) Currently he was seeing Dr. Carter, beginning in 2003. (R:246)

The plaintiff was asked a series of questions about his ability to cope with the mental aspects of work. He testifed that he could not follow work rules because he was impatient and hyper. He was unable to get along with co-workers. He would have trouble with his supervisor since he had a poor ability to follow instructions. (R:250-252) Nor could he tolerate the normal stresses of work or concentrate on his work while he was at work. (R:257)

The plaintiff testified that he was unable to do any household chores, such as dusting or making his bed owing to the pain in his shoulders. (R:258-259) He found grocery shopping too confusing and mentally frustrating, trying to find items on the

shelves. (R:260) He can stand for three to four minutes owing to the pain in his foot and shoulders. He can sit for 20 minutes before his nerves bother him. (R:261)

The Administrative Law Judge, noting that he had to make a credibility determination, asked the plaintiff about the discrepancies in the record regarding his abuse of drugs and alcohol. For example the plaintiff told Dr. Ginsberg that he never had abused drugs, but the rest of the record was replete with reports of drug abuse starting when the plaintiff was 18. The plaintiff remembered telling Dr. Ginsburg that he did not abuse drugs. He testified that he never used any illegal drugs, although he admitted he had abused drugs prescribed for his pain management. He stated that he never used street drugs, and had stopped drinking two years ago. He did not know why the medical records said that he used heroin, marijuana, cocaine and crack cocaine, which he conceded were not prescription drugs. When the Administrative Law Judge asked him directly, on the record, if he was stating that he had never used street drugs, he responded, "Right." (R:252-256)

### III. **DECISION OF THE ALJ**

The Administrative Law Judge (ALJ) noted that the plaintiff was fully insured under the Social Security Act through June 1997, and claimed disability since July 1, 1995. The ALJ found that the plaintiff did not have an impairment or combination of impairments which significantly limited his physical or mental

ability to perform basic work activities for any continuous period of twelve months prior to June 30, 1997.

The record showed that the plaintiff was placed in a mental hospital when he was 13 years old, but there was no evidence of any mental health treatment until after June 1997. The July 28, 1997, report from Dr. Ginsberg was given no weight, since Dr. Ginsberg's evaluation of the plaintiff was based on the plaintiff's statement that he had never used illicit drugs, a statement refuted by the plaintiff's other medical records. The ALJ also found that since the plaintiff's 2002 automobile accident happened after the date the plaintiff was last insured, those injuries were not pertinent.

Because the plaintiff's hearing testimony, that he had never used street drugs, was not credible in light of the medical records showing a long history of polysubstance abuse, and because the medical records provided no documentary evidence to support the plaintiff's complaints of mental disability which limited his ability to perform work-related activities, the ALJ found that the plaintiff's impairments were not severe and did not constitute a disability under the statute. This assessment was in agreement with the opinions of the agency physicians who prepared the two medical assessments of the plaintiff's ability to perform work-related activities.

## IV. CROSS MOTIONS FOR SUMMARY JUDGMENT

The plaintiff's motion for summary judgment asserts that the ALJ (1) incorrectly discounted Dr. Ginsberg's report, (2) should have called upon a medical expert and (3) failed to discuss the degree of severity of each alleged impairment.

The defendant's motion for summary judgment asserts that substantial evidence supports the Commissioner's decision, and that the proper legal standards were applied.

## V. RECOMMENDATIONS OF LAW

At issue before the Court is whether the final decision of the Commissioner, as reflected by the record, is supported by substantial evidence. "Even if the evidence preponderates against the Secretary, we must affirm if the decision is supported by substantial evidence." Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1985). Substantial evidence is defined as such relevant evidence as a reasonable mind would accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389 (1971); Bloodsworth v. Heckler, 703 F.2d 1233 (11th Cir. 1983). The Court must review the record as a whole to determine if the decision is supported by substantial evidence. Bloodsworth, 703 F.2d at 1239. The Court must also determine whether the Administrative Law Judge applied the proper legal standards. No presumption of validity

attaches to the Commissioner's determination of the proper legal standards to be applied. Richardson, supra.

In making a disability determination, the ALJ must perform the sequential evaluation outlined in 20 CFR § 404.1520. First the claimant must not be engaged in substantial gainful activity after the date the disability began. Second the claimant must provide evidence of a severe impairment. Third, the claimant must show that the impairment meets or equals an impairment in Appendix 1 of the Regulations. If the claimant fails to provide sufficient evidence to accomplish step three, the analysis proceeds to step four. In step four, the ALJ must determine the claimant's residual functional capacity, then determine if the claimant can perform his or her past relevant work. If the claimant's evidence shows an inability to perform past relevant work, in step five the ALJ must show that there is other gainful work in the national economy which the claimant can perform. Once the ALJ identifies such work, the burden returns to the claimant to prove his or her inability to perform such work.

In the instant case, the ALJ stopped after step two, finding that there was no documentary evidence and no credible testimony supporting a finding of a severe impairment prior to June 30, 1997.

A.          Dr. Ginsberg's Report

The plaintiff asserts that since Dr. Ginsberg was a seasoned psychologist he was able to see through inaccurate statements from patients. The plaintiff's denials of drug use would not have affected his evaluation of the plaintiff. The report is important because is close to the expiration date of the plaintiff's insured status. The plaintiff contends that failure to consider Dr. Ginsberg's report is gross error; thus, the ALJ's decision was not supported by substantial evidence.

The defendant points out that the plaintiff visited Dr. Ginsberg for depression caused by the death of a friend, which is a situational condition. Dunahoo v. Apfel, 241 F.3d 1033, 1039-40 (8th Cir. 2001)(situational depression was not disabling absent other evidence of significant functional limitations). Dr. Ginsberg did not find that the plaintiff was unable to work, but suggested training to allow the plaintiff to perform clerical jobs or jobs working with numbers. State agency physicians who reviewed the plaintiff's records, including Dr. Ginsberg's report, found that the evidence was insufficient to show a severe impairment during the insured period.

The defendantg also notes that the plaintiff only visited Dr. Ginsberg once, and other than a mental health hospitalization at age 14, had not sought mental health treatment as an adult or

taken medication for any mental condition prior to June 30, 1997, or any time thereafter until years later. The absence of ongoing treatment or use of medication is evidence that a mental impairment is not severe. Roberts v. Apfel, 222 F.3d 466, 469 (8th Cir. 2000); Williams v. Sullivan, 960 F.2d 86, 89 (8th Cir. 1992).

The Court finds that there is substantial evidence in the record to support the ALJ's finding that the plaintiff did not suffer from a severe mental impairment during the period of insurance, nor was there any such evidence for the period immediately after the insured period had expired.

B. Medical Expert

The plaintiff asserts that a medical expert could have helped establish the onset date for the plaintiff's mental impairment, and the efficacy of treatment. Marbury v. Sullivan, 957 F.2d 837, 840-41 (11th Cir. 1992); Freeman v. Schweiker, 681 F.2d 727, 731 (11th Cir. 1982)(cases finding that the ALJ could not substitute his personal opinion for the opinions of medical professionals).

The defendant contends that the ALJ is not required to seek additional independent expert medical testimony if the record is sufficient to make an informed decision. Wilson v. Apfel, 179 F.3d 1276, 1278 (11th Cir. 1999) The plaintiff bears the burden of

of providing medical evidence of a mental impairment. McCray v. Massanari, 175 F.Supp.2d 1329, 1339 (M.D. Ala. 2001).

The Court finds that while the plaintiff did not provide much evidence from the relevant time period, the evidence was sufficient to make an informed decision. Accordingly, the ALJ was not required to call a medical expert.

C.      Impairment Severity

The plaintiff contends that since the ALJ failed to consider the plaintiff's memory and other mental impairments separately, he was unable to ascertain correctly the extent of the plaintiff's disability. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1988); Williams v/ Barnhart, 186 F.Supp. 1192, 1197-98 (M.D. Ala. 2002).

The defendant asserts that the ALJ clearly considered and discussed the plaintiff's impairments during the insured period, separately and in combination: depression, fatigue, drug use and failure to seek treatment.

The Court notes that no medical report stated that the plaintiff had memory problems, and Dr. Ginsberg found that he had a superior score in short term memory for digits. The ALJ did consider and discuss each of the plaintiff's alleged impairments. The Court finds that the ALJ correctly ascertained the extent of the plaintiff's disability.

## VI. CONCLUSION

This Court having considered carefully the pleadings, arguments of counsel, and the applicable case law, it is hereby

RECOMMENDED that the Plaintiff's Motion for Summary Judgment (Docket Entry 14) be DENIED and the Defendant's Motion for Summary Judgment (Docket Entry 19) be GRANTED.

The parties will have ten days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, for consideration by The Honorable William J. Zloch, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal factual findings contained herein. LoConte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); RTC v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

DONE AND SUBMITTED at Fort Lauderdale, Florida, this 24th day of April, 2008.

LURANA S. SNOW
UNITED STATES MAGISTRATE JUDGE

Copies to:
Bernard J. Levy, Esq. (P)
AUSA Steven R. Petri (D)